# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

      Plaintiff,

v.                              CRIMINAL NO.  1:10CR74
                                    (Judge Keeley)

BENJAMIN BRYAN,

      Defendant.

## MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE [DKT. NO. 28] AND DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE [DKT. NO. 11]

### I.   INTRODUCTION

The defendant, Benjamin A. Bryan ("Bryan"), is charged with knowingly receiving and possessing a Westernfield shotgun, model M550ED, .410 gauge, serial number G995258 ("the shotgun"), not registered to him in the National Firearms Registration and Transfer Record, in violation of 26 U.S.C. §§ 5861(d) and 5871.

Bryan moved to suppress the shotgun, and also sought to suppress any testimony or information by Special Agent Kenneth Grace of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("Special Agent Grace") or any other witnesses having information as to the shotgun (dkt. no. 11).  The Court referred the motion to the Honorable John S. Kaull, United States Magistrate Judge ("Magistrate Judge Kaull"), who issued a report and recommendations

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION
OF THE MAGISTRATE JUDGE [DKT. NO. 28] AND DENYING DEFENDANT'S
MOTION TO SUPPRESS EVIDENCE [DKT. NO. 11]**

("R&R") (dkt. 28) recommending that Bryan's motion be denied. Bryan filed timely objections to the R&R (dkt. no. 34), to which the government has responded (dkt. no. 39). The matter is ripe for review and, for the reasons that follow, the Court denies Bryan's motion to suppress.

## II.   FACTUAL BACKGROUND

At approximately 8:00 P.M. on February 2, 2010, Trisha Samuels called 911 to report that a big screen television was missing from her residence at 1280 Hillside Drive, Fairmont, West Virginia. Officers Glenn Staley ("Officer Staley") and Brian Speakman ("Officer Speakman") of the Fairmont Police Department responded to the call. They interviewed the tenants of 1280 Hillside Drive, including Trisha Samuels, Gerald Gill,[1] Tatiana Bonner, and Fabiola Siewe,[2] and learned that someone had stolen a 42-inch Samsung television and a Dell laptop from their home.

While meeting with these tenants, Officer Staley observed boot

---

[1]   The correct spelling of Gill's name is unclear. In some places in the record it appears as "Gerod" and in others as "Gerald." This Order will refer to him as "Gerald Gill."

[2]   Although Fabiola Siewe had resided for some time at 1280 Hillside Drive, she apparently did not live there pursuant to a leasing agreement, or with permission from the property owners. See Def.'s Offer of Proof at 8 (dkt. no. 23).

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION
OF THE MAGISTRATE JUDGE [DKT. NO. 28] AND DENYING DEFENDANT'S
MOTION TO SUPPRESS EVIDENCE [DKT. NO. 11]**

tracks in the snow leading from 1280 Hillside Drive to a neighboring

residence at 1284 Hillside Drive. Officer Staley knew that the

defendant, Bryan, lived at this residence and consequently

identified him as a burglary suspect.

Based on this information, at approximately 9:25 P.M., Officer

Staley sought a warrant from Marion County Magistrate Melissa Linger

("Magistrate Linger") to search Bryan's residence. His affidavit

and complaint in support of the warrant averred as follows:

> This day personally appeared before the
> undersigned, a magistrate for said County, CPL
> G STALEY, who, after being first duly sworn,
> upon his oath says:
>
> That on the 2 day of FEB, 2010, and prior to
> the making of this Complaint, in the said
> county of MARION, BEN BRIAN did unlawfully
> [](and feloniously) STEAL FROM 1280 HILLSIDE
> DRIVE A PLASMA TV OWNED BY GERALD GILL AND A
> DELL LAPTOP OWNED BY FAVIOLA SIEWE DURING A
> RESIDENTIAL BURGLARY AND THEN CONCEAL AT 1284
> HILLSIDE DRIVE, FAIRMONT WV
> and that the affiant has cause to believe and
> does believe that property,
> > *a) (Stolen) (Embezzled) (Obtained by
> >      false pretenses)
> > ~~*b)~~ (Designed and intended for use)
> >      (which is and has been used) as a
> >      means of committing such criminal
> >      offense
> > ~~*c)~~ (Manufactured)    (sold) (kept)
> >      (concealed) (possessed) (controlled)
> >      (designed and intended for use)
> >      (which is and has been used) in
> >      violation of the criminal laws of the

> state
>
> *d) (Evidence of a crime)
> Namely, 42 INCH SAMSUNG PLASMA TV AND DELL INSPIRON LAPTOP COMPUTER WITH A SHIN IT STICKER ON THE COVER is concealed in 1284 HILLSIDE DRIVE, FAIRMONT WV CREAM COLOR WITH BROWN BASEMENT WITH STEPS LEADING FROM THE ROAD TO THE FRONT DOOR and that the facts for such belief are ON 2-2-2010 THE RESIDENCE AT 1280 HILLSIDE DRIVE WAS ENTERED BY A [sic] UNLOCKED REAR WINDOW, AND TAKEN FROM THE HOUSE WAS A 42 INCH SAMSUNG TV AND A DELL LAPTOP. THERE WAS [sic] TRACKS FROM THE BACK DOOR OF THE RESIDENCE WHICH WENT THROUGH THE SNOW (APPEAR TO BE FRESH) TO 1284 HILLSIDE DRIVE TO THE BACK DOOR.

Affidavit and Complaint for Search Warrant (dkt. no. 11-1) ("*b" and "*c" crossed out in issued search warrant). At approximately 9:58 P.M., Magistrate Linger signed a search warrant authorizing the search of Bryan's residence at 1284 Hillside Drive for the missing Samsung television and Dell laptop.

At approximately 10:00 P.M., Officers Staley and Speakman executed the search warrant at 1284 Hillside Drive. Upon entering the residence, Officer Staley conducted a protective sweep, during which he observed marijuana, a marijuana pipe, and also a pair of boots in the kitchen. After taking note of these items, he continued searching for the stolen television and laptop. While doing so, he observed a shotgun hanging from the back left post of a bed in one of the bedrooms. He then walked into another room,

where he found the television in an open closet.  After this, he secured the marijuana and continued searching for the laptop.

Officer Staley reentered the bedroom where he had seen the shotgun. Based on the shotgun's length, he suspected that its dimensions were illegal.  As a result, at approximately 10:37 P.M., he contacted Special Agent Grace to request his assistance at the residence.  Officer Staley then continued searching for the laptop, which he located in a bag behind the television.  When Special Agent Grace arrived at the residence, he inspected the shotgun and seized it after an onsite examination confirmed it had an illegally short barrel.

### III.   THE REPORT AND RECOMMENDATION

In his motion to suppress, Bryan raised five arguments.  First, he contended that the affidavit and complaint submitted by Officer Staley were unsupported by probable cause to obtain the search warrant. Second, he argued that he was entitled to a hearing under Franks v. Delaware, 438 U.S. 154 (1978) to challenge the basis for the search warrant.  Third, he asserted that Officer Staley exceeded the scope of the search authorized by the warrant.  Fourth, he claimed that the shotgun was not in plain view when Officer Staley found it.  Finally, Bryan contended that before Special Agent Grace

entered Bryan's residence and seized the shotgun, he should have obtained a search warrant.

During a suppression hearing on the motion, Magistrate Judge Kaull heard testimony from Officer Staley, Officer Speakman, and Special Agent Grace. In a thorough and well-reasoned R&R, he concluded that the warrant issued by the state magistrate was supported by probable cause, that Bryan had failed to demonstrate entitlement to a <u>Franks</u> hearing, that Officer Staley's search did not exceed the scope of the search warrant, that Officer Staley had discovered the shotgun in plain view, and that the shotgun had a "readily apparent" incriminating nature. <u>See</u> <u>United States v. Wells</u>, 98 F.3d 808 (4th Cir. 1996). Finally, Magistrate Judge Kaull concluded that it was unnecessary for Special Agent Grace to obtain a search warrant prior to entering Bryan's residence because no federal officers were involved in the investigation leading to the issuance of the search warrant, and there was no evidence that law enforcement officers had attempted to evade the requirements of Fed. R. Crim. P. 41.

## IV.  STANDARD OF REVIEW

In reviewing a magistrate judge's R&R, the Court reviews <u>de novo</u> any portions of the R&R to which a specific objection is made,

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE [DKT. NO. 28] AND DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE [DKT. NO. 11]**

28 U.S.C. § 636(b)(1), but may adopt without explanation any recommendations to which no objections are filed. <u>Camby v. Davis</u>, 718 F.2d 198, 199 (4th Cir. 1983); <u>see</u> <u>also</u> <u>Nettles v. Wainwright</u>, 656 F.2d 986, 986-87 (5th Cir. 1981). A failure to file specific objections "waives appellate review of both factual and legal questions." <u>Moore v. United States</u>, 950 F.2d 656, 659 (10th Cir. 1991).

## V. ANALYSIS

In his objections to the R&R, Bryan argues that Magistrate Judge Kaull erred in finding that the issuance of the state search warrant was supported by probable cause, and by denying him a <u>Franks</u> hearing. Further, he asserts that Magistrate Judge Kaull erred as a matter of law when he concluded that Special Agent Grace was lawfully present in the residence. The Court will address each of these arguments in turn.

**A.    The State Magistrate's Issuance of the State Warrant**

The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION
OF THE MAGISTRATE JUDGE [DKT. NO. 28] AND DENYING DEFENDANT'S
MOTION TO SUPPRESS EVIDENCE [DKT. NO. 11]**

> affirmation, and particularly describing the
> place to be searched, and the persons or things
> to be seized.

U.S. Const. amend IV.  A judicial officer may issue a search warrant only when she has probable cause to believe "there is a fair probability that contraband or evidence of a crime will be found in a particular place."  Illinois v. Gates, 462 U.S. 213, 238-39 (1983).  In making this determination, the judicial officer must evaluate the "totality-of-the-circumstances," and make a "practical, common-sense decision" to determine whether "the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information" support a finding of probable cause.  Id.

A court reviewing the issuance of a search warrant must "simply ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed."  Id. (quoting Jones v. United States, 362 U.S. 257, 271 (1960)).  Accordingly, this Court "must accord 'great deference' to the magistrate's assessment of the facts presented to him.'" United States v. Blackwood, 913 F.2d 139, 142 (4th Cir. 1990) (quoting Spinelli v. United States, 393 U.S. 410 (1969), abrogated on other grounds by Gates, 462 U.S. at 238)).

Bryan contends that Magistrate Judge Kaull erroneously applied

8

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE [DKT. NO. 28] AND DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE [DKT. NO. 11]**

these standards because, under the totality of the circumstances test, the facts presented to Magistrate Linger failed to support her finding of probable cause.  Under a deferential standard of review, however, it is clear that Magistrate Linger's issuance of the search warrant was supported by probable cause.

On February 2, 2010, Officers Staley and Speakman received a report of a suspected burglary at 1280 Hillside Drive, including the alleged theft of a Samsung television and a Dell laptop.  The affidavit and complaint presented to Magistrate Linger indicated that these items had been stolen from the residence and that Officer Staley had observed fresh tracks from the residence to the back door of a neighboring house at 1284 Hillside Drive.  This information was based on Officer Staley's investigation and first-hand observations, and was sufficient to permit Magistrate Linger to make a "common-sense decision" that there was "a fair probability that contraband or evidence of a crime" would be found at 1284 Hillside Drive. Gates, 462 U.S. at 238.  Thus, Magistrate Judge Kaull correctly concluded that the information presented to Magistrate Linger adequately supported her finding of probable cause.

**B.    Entitlement to a Franks Hearing**

In the seminal case of Franks v. Delaware, the Supreme Court

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE [DKT. NO. 28] AND DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE [DKT. NO. 11]**

of the United States held that a defendant is entitled to a hearing to challenge the veracity of the information supporting a search warrant if he can make "a substantial preliminary showing" that the affiant "knowingly and intentionally," or "with reckless disregard for the truth," made a false statement when such statements were "necessary to the finding of probable cause." 438 U.S. at 155–56. "This showing 'must be more than conclusory' and must be accompanied by a detailed offer of proof." United States v. Colkley, 899 F.2d 297, 300 (4th Cir. 1990) (quoting Franks, 438 U.S. at 171). Although Franks applies to deliberate falsehoods, the test will also apply "when affiants omit material facts 'with the intent to make, or in reckless disregard of whether they thereby made, the affidavit misleading.'" Id. (quoting United States v. Reivich, 793 F.2d 957, 961 (8th Cir. 1986)).

Under Franks, where omissions are involved, a defendant will be entitled to a hearing only when "the omission is the product of a 'deliberate falsehood or of reckless disregard for the truth.'" Id. at 301 (quoting Franks, 438 U.S. at 1717). "'[M]ere[ ] negligen[ce] in . . . recording the facts relevant to a probable-cause determination' is not enough." Id. (quoting Franks, 438 U.S. at 170) (alterations in original). In addition to demonstrating

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION
OF THE MAGISTRATE JUDGE [DKT. NO. 28] AND DENYING DEFENDANT'S
MOTION TO SUPPRESS EVIDENCE [DKT. NO. 11]**

intent to mislead, a defendant must establish that the omitted information was "material." Id. "[T]o be material under Franks, an omission must do more than potentially affect the probable cause determination: it must be 'necessary to the finding of probable cause.'" Id. (quoting Franks, 438 U.S. at 156). In other words, the omitted information "must be such that its inclusion in the affidavit would defeat probable cause for arrest[;] [o]mitted information that is potentially relevant but not dispositive is not enough to warrant a Franks hearing." Id. (citing Reivich, 793 F.2d at 961). Thus, a defendant faces a more onerous burden when seeking a Franks hearing based on an omission, "rather than on a false statement." United States v. Tate, 524 F.3d 449, 454 (4th Cir. 2008).

Here, Bryan seeks a Franks hearing based on Officer Staley's omission of information from the affidavit and complaint submitted to Magistrate Linger. His offer of proof asserts that Officer Staley knew that Bryan's father, Robert Bryan, and his sister, Cara Bryan, owned the residence at 1280 Hillside Drive, and that Bryan served as the de facto landlord of that property. He further contends that Officer Staley knew Bryan owned the residence at 1284 Hillside Drive. According to Bryan, Officer Staley had responded

to a landlord-tenant dispute between Robert Bryan and his tenants at 1280 Hillside Drive on January 20, 2010, and at that time advised Bryan's father to initiate eviction proceedings against his tenants.

Pursuant to the advice of Officer Staley, on January 20, 2010, Robert Bryan initiated summary eviction proceedings against Gerald Gill and Tatiana Bonner. On February 1, 2010, Marion County Magistrate Cathy Reed-Vanata ("Magistrate Reed-Vanata") entered judgment in the amount of $250.00 in favor of Robert Bryan against tenant Tatiana Bonner, and dismissed the case against Gerald Gill. See (dkt. no. 23-8). Magistrate Reed-Vanata, however, did not order any tenants to vacate the premises.

The next day, February 2, Officer Speakman responded to a police report that Robert Bryan and his tenants were involved in a dispute concerning the tenants' car. Officer Speakman concluded that the matter involved a "disagreement over a phone," and consisted of a "civil matter over vehicle assignment." Def.'s Offer of Proof at 9 (dkt. no. 23). Later in the evening of February 2, Bryan entered the residence at 1280 Hillside Drive and removed several items, including the Dell laptop and Samsung television. He claims he did so at his father's direction, acting under the

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE [DKT. NO. 28] AND DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE [DKT. NO. 11]**

belief that the tenants had moved out.[3]  See id. at 9-10.  He claims further that he removed the items to keep them safe, something that, as a landlord, he contends he was legally authorized to do under W. Va. Code § 55-3A-3(h)(2).[4]

According to Bryan, Officer Staley intentionally or recklessly failed to disclose these facts, including the ongoing civil dispute between the Bryans and their tenants at 1280 Hillside Drive, to

---

[3]  Although Magistrate Reed-Vanata did not order any of the tenants to vacate the premises, Bryan and his father believed that they had already abandoned the residence and moved out.  Such beliefs, however, are not clearly relevant to the question of whether the tenants at 1280 Hillside Drive were lawfully permitted to occupy the residence.

[4]  When a tenant makes an appearance at an eviction hearing, or files a responsive pleading to a summary eviction complaint, W. Va. Code § 55-3A-3(f) directs a court entering an order of eviction to "specify the time when the tenant shall vacate the property." Thirty days after such a deadline has passed, the statute authorizes a landlord, in some instances, to remove and store the property "without incurring any liability or responsibility" for it.  W. Va. Code §§ 55-3A-3(h)(2).  Here, Magistrate Reed-Vanata never ordered the tenants to vacate the premises, and there is no indication the Bryans were ever entitled to immediate possession. Thus, W. Va. Code § 55-3A-3 provides Bryan with a doubtful basis for asserting he had lawful authority to enter the premises and seize the Samsung television and Dell laptop.  In any event, when Officer Staley was confronted with allegations of burglary, to the extent he knew of the litigation history between the Bryans and their tenants, his knowledge of such litigation could not provide him with a reasonable basis for concluding that Bryan had lawfully entered 1280 Hillside Drive and seized the laptop and television. Given the highly portable nature of such personal property, Officer Staley's investigative actions were appropriate.

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION
OF THE MAGISTRATE JUDGE [DKT. NO. 28] AND DENYING DEFENDANT'S
MOTION TO SUPPRESS EVIDENCE [DKT. NO. 11]**

Magistrate Linger. He contends that the inclusion of this
information would have defeated a finding of probable cause.

Bryan's argument fails. While it is possible that, had Officer
Staley included the omitted information in his affidavit, Magistrate
Linger might have declined to issue the search warrant, such
omission "must do more than potentially affect the probable cause
determination: it must be 'necessary to the finding of probable
cause.'" Colkley, 899 F.2d at 301. Importantly, Bryan does not
assert that the information Officer Staley included in the affidavit
was unlawfully procured or false on its face. Moreover, there is
no indication that Officer Staley omitted this information for the
purpose of deceiving or misleading Magistrate Linger. Thus, because
the information Officer Staley did include was sufficient to support
a finding of probable cause, Bryan fails to establish that the
omitted information was material. Id.

Although it appears that, at the time Officer Staley
investigated the reported burglary on February 2, 2010, he possessed
information regarding the civil dispute between the Bryans and their
tenants at 1280 Hillside Drive, it does not follow that, upon his
arrival at the scene, he should have concluded that Bryan had
lawfully entered the premises and seized the television and the

laptop.  Based on the information Officer Staley possessed,
therefore, it was possible for him to conclude that Bryan had stolen
the items.

In any event, the information included in Officer Staley's
affidavit was truthful and adequate to support Magistrate Linger's
finding of probable cause.  The Court therefore affirms Magistrate
Judge Kaull's conclusion that the information omitted by Officer
Staley does not entitle Bryan to a <u>Franks</u> hearing.

**C.   The Fourth Amendment and the Plain View Doctrine**

"[T]he plain-view doctrine authorizes warrantless seizures of
incriminating evidence when (1) the officer is lawfully in a place
from which the object may be plainly viewed; (2) the officer has a
lawful right of access to the object itself; and (3) the object's
incriminating character is immediately apparent." <u>United States v.
Jackson</u>, 131 F.3d 1105, 1109 (4th Cir. 1997) (citing <u>Horton v.
California</u>, 496 U.S. 128, 136-37 (1990)).

Here, Bryan argues that the plain view doctrine should not
apply to the seizure of the shotgun because Special Agent Grace was
not lawfully present in the residence when he seized the weapon.
Bryan relies on <u>United States v. Sanchez</u>, 509 F.2d 886 (6th Cir.
1975), to support his argument.  There, the Sixth Circuit held that,

15

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE [DKT. NO. 28] AND DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE [DKT. NO. 11]**

"[w]hen a law enforcement officer has prior knowledge of the existence and location of property which he has probable cause to believe is illegally possessed, as well as ample opportunity to obtain a judicially sanctioned search warrant, the Fourth Amendment mandates that he must [first obtain a warrant]."  Id. at 890. Because Special Agent Grace had ample opportunity to obtain a search warrant and had probable cause to believe there was an unlawful firearm in Bryan's residence, Bryan argues he was required to obtain a search warrant prior to entering.  Bryan also argues that Special Agent Grace's failure to do so requires the suppression of all evidence seized by him.

As a threshold matter, the facts in Sanchez are distinguishable from those here.  In Sanchez, state officers and a federal agent simultaneously executed a search based on a state search warrant for drugs.  Id. at 888.  Because the state officers believed explosives might be found during the search, they requested the presence of an ATF agent, but failed to seek an additional warrant to search for explosives.  Id.

Here, Special Agent Grace did not accompany Officers Staley and Speakman when they executed the search warrant, and arrived on the scene only after Officer Staley contacted him following the

unexpected discovery of the shotgun.

The Sixth Circuit based its holding in Sanchez on the
plurality opinion in Coolidge v. New Hampshire, 403 U.S. 443, 454-
55 (1971), which limited the plain view doctrine to inadvertent
discoveries of evidence. Later, in Horton v. California, 496 U.S.
at 130, a majority of the Supreme Court explicitly abolished
Coolidge's inadvertence limitation, concluding "that even though
inadvertence is a characteristic of most legitimate 'plain-view'
seizures, it is not a necessary condition." 496 U.S. at 130.
Thus, to the extent the decision in Sanchez was based on the
inadvertence limitation articulated in Coolige, its continued
viability is doubtful. See United States v. Garcia, 496 F.3d 495,
515 (6th Cir. 2007) (Moore, J., concurring).

Finally, the lawfulness of Special Agent Grace's search can be
upheld under existing Fourth Circuit precedent. See Anglin v.
Director, Patuxent Institution, 439 F.2d 1342, 1347 (4th Cir. 1971)
(holding that, "[o]nce the privacy of the dwelling has been
lawfully invaded, it is senseless to require police to obtain an
additional warrant to seize items they have discovered in the
process of a lawful search. 'There is no war between the
Constitution and common sense.'" (quoting Mapp v. Ohio, 367 U.S.

643, 657 (1961)).

Applying a similar rule in United States v. Green, the Fifth
Circuit affirmed a district court's denial of the defendant's
motion to suppress.  474 F.2d 1385, 1386 (5th Cir. 1973).  In
Green, firemen responded to a blaze at the defendant's apartment.
The defendant, however, was not home at the time of the fire.
After the fire had been extinguished, Deputy Fire Chief Melzer
("Deputy Melzer") entered the residence to investigate the cause of
the fire. While doing so, he observed several metal plates that he
believed to be evidence of counterfeiting activity.  Id. at 1386-
87.

Based on this belief, he requested the assistance of Secret
Service Agent Varenholt ("Agent Varenholt") who, without obtaining
a search warrant, joined Deputy Melzer at the scene of the fire to
examine the plates.  After Agent Varenholt concluded that the metal
plates had been used for counterfeiting, the occupant of the home
was prosecuted, and ultimately convicted, of using the plates to
counterfeit obligations of the United States.

In Green, the Fifth Circuit concluded that Deputy Melzer was
lawfully present during the fire investigation and rejected the
defendant's challenge to Agent Varenholt's warrantless presence in

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION
OF THE MAGISTRATE JUDGE [DKT. NO. 28] AND DENYING DEFENDANT'S
MOTION TO SUPPRESS EVIDENCE [DKT. NO. 11]**

his home:

> Where a lawful intrusion has already occurred
> and a seizure by a State officer has validly
> taken place as a result of the intrusion, the
> invasion of privacy is not increased by an
> additional officer, albeit a federal officer,
> who is expert in identifying the type of
> contraband discovered, to enter the premises
> to confirm the belief of the State officer and
> to take custody of the evidence. **Once the
> privacy of a dwelling has been lawfully
> invaded, to require a second officer from
> another law enforcement agency arriving on the
> scene of a valid seizure to secure a warrant
> before he enters the premises to confirm that
> the seized evidence is contraband and to take
> custody of it is just as senseless as
> requiring an officer to interrupt a lawful
> search to stop and procure a warrant for
> evidence he has already inadvertently found
> and seized.**

Id. at 1390 (emphasis added) (citing Terry v. Ohio, 392 U.S. 1
(1968)).

Here, Officer Staley was lawfully present in Bryan's residence
when he discovered the shotgun in plain view. Relying on his
thirty-plus years of law enforcement experience, Officer Staley
suspected that it was unlawfully short. See Jackson, 131 F.3d at
1109. Thus, when Special Agent Grace entered Bryan's home at the
request of Officer Staley, the privacy of Bryan's home had already
been lawfully invaded and the second intrusion did not further

19

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE [DKT. NO. 28] AND DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE [DKT. NO. 11]**

exacerbate the intrusion.  See Green, 474 F.2d at 1340; Anglin, 439 F.2d at 1347.  It therefore was not necessary for Special Agent Grace to obtain a search warrant prior to entering Bryan's residence, and his entry did not offend any privacy interests. Accordingly, the court affirms the conclusion of Magistrate Judge Kaull that it was unnecessary for Special Agent Grace to obtain a search warrant prior to entering the home.

## VI. CONCLUSION

For the reasons discussed, the Court **ADOPTS** the R&R in its entirety (dkt. no. 28) and **DENIES** Bryan's motion to suppress evidence (dkt. no. 11).

It is so **ORDERED.**

The Court directs the Clerk to transmit a copy of this Order to counsel of record, and all appropriate agencies.

DATED: February 22, 2011.

                                    /s/ Irene M. Keeley
                                    IRENE M. KEELEY
                                    UNITED STATES DISTRICT JUDGE